May I please the Court? Yes, sir. The first point is that there's a difference between the validity of a debt that a creditor is seeking to collect from the actual actions of that creditor to collect the debt. The case that was filed here centered around not the validity of the debt, but rather the collection of that debt. This debt arises from an adverse arbitration award. It's a whopper, $31 million. What underlies this dispute? There was an agreement between a lady named Toby Shor, who is very wealthy, and Paul Black, who is somewhat wealthy, and they were in an operation of oil and gas exploration. Paul Black and Toby Shor got into a very serious dispute with one another. Had an arbitration clause went to arbitration, Mr. Black lost, Toby Shor won. We do not here in this case complain about that. That's just history. Most people, Your Honor, wouldn't be able to survive financially being hit with a $31 million adverse arbitration award. Mr. Black's different for two reasons. He's got a spendthrift trust so he can pay his bills and eat food, take care of his family. But he also had multiple oil and gas companies, the collection of which were worth significant amounts of money, greatly exceeding the amount of his debt. He was going to use those companies to be able to pay this debt down over time. But what happened and why the lawsuit got filed is in the post-collection timeframe, these defendants went in and grabbed companies that were not debtors. They weren't part of the arbitration. As you'll see from the pleading, we filed on behalf of 27 plaintiffs, 25 of which are companies, two of which are individuals. One of the individuals is Mr. Black's wife. She's not part of that arbitration. She's not part of the adverse award. But importantly, of the 25 companies, 17 of them are strangers to this arbitration adverse judgment. They weren't in that case. They're not part of that case, never have been in any state court judgment that we're complaining about ever. And so that backdrop, to answer Your Honor Judge Jones, is important to understand. So now why are we here? The trial court granted a motion to dismiss by the defendants on two grounds. First, 12b-1, and it was Rooker-Feldman. Second, 12b-6, saying that we didn't comply with the Twombly standard and having enough plausible allegations of fact, and so that fell apart as well. There were supplemental jurisdictions, but all of those fell apart when she ruled, the trial court ruled, that we lost under 12b-1 or 6. I want to start with the Rooker-Feldman doctrine. I just mentioned a moment ago that there were 25 companies, 17 of which were strangers to this. Rooker-Feldman presupposes that you're saying we don't have jurisdiction to hear from a state court loser. Seventeen of these companies weren't state court losers. They weren't even in state court. Now, eight of these companies were state court losers. Now, did he own all the stock of them? He had an indirect interest in LPs, LLCs, Limiteds, and a couple of LPs. They're a bunch of different companies. So you're saying they were not executing on his ownership of the stock in those companies. Exactly right. That's where they messed up. What they did is, as you know, under Texas law, when you have an exempt interest, and these are exempt interests because he had an interest in LPs, LCs, and the like. This is all in our brief. When you have an exempt interest, you can't grab the company. All you can do is get a charging order and be entitled to receive a distribution from those companies if and when they occur. But what they did here, Judge, is they actually got an order post-collection that said that they get the actual possession of all 25 companies. And what's supposed to happen is you're supposed to put companies to a sheriff, but they actually took the credit or possession themselves. To get a little more finely tuned here, though, the state court reversed that execution or executions. That's right. So you're back and Mr. Black is back in charge or whatever it is. Those are reversed. That's right. So why do you still have a claim against these people? Well, because once the defendants got possession of the 25 entities, they intentionally ran them into the ground. As we plead in our petition, for example, we had real estate. We owned buildings. We owned clubs. We owned restaurants. Toby Shore, when she got possession, a reasonably prudent creditor would actually want those things to run well because you want to get in money so you can pay down the debt that you're owed. Her, as we allege in the petition, animus was such that being an heiress to a billionaire family fortune, she didn't care about $31 million. What she wanted to do was run Paul Black and his operation into the dirt. And so what she did is she took rents, for example, that tenants were paying and didn't pay the landlord so that the landlord then went in and foreclosed on the property. So real estate's lost. Allowed seismic licenses to lapse. Refused to pay debts. Wouldn't do any of the contractual deals for expiration that had been entered. So literally they ran it into the ground, to answer your question. That's a far cry from a state court loser screaming about an adverse arbitration judgment. What is the federal claim then? How would it get to federal court? Yes, Your Honor. First, under 1983, we alleged two things. First, there was an illicit attempt by the defendants to procure orders they're not entitled to under Texas law, i.e. asking for possession of companies that aren't parties to the judgment, i.e. asking for direct ownership of companies rather than it being given to the sheriff for foreclosure sale, and i.e. not giving any credit or offset for the value of whatever was seized against the outstanding debt. So that's the first argument. Who was the state actor in that first type of claim? The court itself. There's a judge named John Martinez who's no longer on the bench, but we allege in the live pleading that there were ex parte communications between that judge and the defendants, including Doug Allison. Doug Allison, who's a defendant in this case, had communications both before and after each of these key hearings that aren't recorded anywhere and that we allege were ex parte. Well, just because they're ex parte doesn't mean they're illegal. They might be contrary to good practices. But do you – as I understand it, there's no allegation that Judge Martinez was involved in any sort of aiding or abetting conspiracy or anything with these private actors. Actually, prior counsel at the trial court level did make that allegation, Your Honor. Judge Martinez is not a defendant because he has immunity. But because Judge Martinez was alleged to have conspired and engaged in – Don't you have to do more than just make a conclusory allegation? Don't you have to give some – put some meat on the bones? You do. So what did he supposedly do that would have been in some sort of confederacy with these private actors? Well, for example, one of the orders was purported to be an agreed order. The actual parties in the case, Your Honor, were four. Paul Black, two entities indirectly owned by Paul Black and Frost Bank. Toby Shore is not in that case. Richard Daly, Toby Shore's lawyer, not in that case. Doug Allison, defendant here, not in that case. They went to court and presented an order in the style Paul Black's name was redacted. In the body of the order, it says that there was an oral motion, not true. There had been a hearing, not true. And that it was an agreed order, not true. In addition, we allege, Your Honor, that that order doesn't bear the signature of a single party in the case. Paul Black didn't sign it. He was pro se. Let's assume all of that is correct. That doesn't mean that Judge Martinez did anything illegal by signing the order. He just might have been sloppy. He might have just looked at it and signed it. You may be right. That's what summary judgments are for. That's what jury trials are for. But that's not what 12b-6 or 12b-1 is for because under 12b-6, the standard is that you have to assume that our factual allegations are true. And what I was about to say on this order. All allegations. Yes, Your Honor. Plausible under Twombly. And, you know, obviously we have not at this stage taken depositions. We have, but this is not in the record. We have gotten phone records in another proceeding, but that's not before you because it just happened. But we're making an allegation and a pleading in the document. So to go back to answering Judge Prado's question, he asked me about what Federal claims there are. It's the 1983 claim. And then also under 1983 we make an as-applied constitutional challenge because we say that if, indeed, it's appropriate to grab strangers to an arbitration and actually possess their assets and be able to do with them as you wish and breach fiduciary duties, that would be unconstitutional. Well, I don't see how you'd have that argument at all since the state courts reversed the foreclosures. That's my point exactly, actually. The converse is true. What I'm saying is that under a 12B1 Rooker-Feldman jurisdictional ruling, that can't be true because we're not a state court loser. We won. Yeah, you've won, but that means you've won. So that issue is disposed of. Well, no, because even if we've won the issue of the invalidity of the turnover collection efforts, that doesn't mean there's not a damage claim arising from the intentional destruction of those entities. Why didn't you have that in state court under Rung for foreclosure or abusive process? We do. That's not in this record, but I want to answer your question. What we did is we filed last year similar lawsuits in state court. They're proceeding as we speak. What's the point in filing in federal court as well? Well, because, first of all, in a state court proceeding they're saying that limitations has run. Yeah, but you have concurrent jurisdiction over the 1983 claims, and it's the same limitations in both cases. That's true. But what the case law says is that we can have parallel federal and state proceedings. You can. And from a 12B1 perspective, that's not a reason to knock us out on Rooker-Feldman. I'm trying to ameliorate the harm of having had the federal court case dismissed by filing now in state court. So if, indeed, there was jurisdiction over these claims, and we contend that there were, then what would happen is this case would go back to the trial court, and it may very well be that the trial judge will abate this proceeding pending resolution of state court matter, or we would be within our rights to non-suit the state court matter and proceed in federal court as we'd wanted to in the first place. That is our procedural backup plan to protect our client's interest in case this court or the U.S. Supreme Court holds that the dismissal was proper. We don't want to wait any longer. So that's why those proceedings are there, Your Honor. On the question, though, about Rooker-Feldman, it cannot be applied to 17 of these litigants because they weren't parties to the judgment. So to that extent, the ruling, we believe, was improper. Well, what about the eight that were parties? What we're saying there is that they're complaining of the defendant's conduct in obtaining the relief that they obtained, which has been successfully litigated in state court by us, and then killing our companies in the process. So the source of injury is not the judgments. It's the actions of collection and then decimation of the companies by the defendants and those independent claims. As I see my time is about to expire, I'll quickly jump to 12b-6. Your Honor, when you ask what federal claims are out there, it's 1983. It's bid rigging, which is an antitrust claim under the Sherman Act. And then, in addition, we had a conspiracy claim and a fiduciary duty claim. What the trial court did is out of the 11 claims that we made, she knocked out eight of them based on Rooker-Feldman. The three that remained was just the bid rigging claim. That's the only federal claim remaining, and then two state law-appendant claims. So on the bid rigging claim, she ruled that we had not alleged parallel conduct that was illegal. Judge Marsdale, when I was telling you some commentary about this order where it was supposed to be agreed and it wasn't, it wasn't signed by the parties, those are the allegations that we rely upon to say that the trial court got it wrong, that, in fact, we did allege improper parallel conduct. What they were trying to do is rig a bid so that Defendant Allison could be the owner of a restaurant and a bar and that Frost Bank would allow that to happen through this illicit order that wasn't agreed to by anyone. And so those allegations form the basis, and we believe are sufficient under Twombly, to require denial. So we ask in sum, Your Honors, for this case to be remanded for further proceedings. All right. Thank you. All righty. Ms. Southwick. Good morning. I recognize you, Ms. Southwick, but are you related to Judge Southwick also? Well, my husband's family reports that all Southwicks in the U.S. are related to Lawrence and Cassandra Southwick, who were cast away from Plymouth because they were Quakers. That's all I know about whether I'm related to Judge Southwick. So they're the Plymouth Cajuns. That's right. Okay. That's right. May it please the Court. Mr. Black's primary argument on Rooker Feldman appears to be that his claims are independent of the state court judgments. But they are not. How do we know that? By looking at the relief he seeks. His claims for relief include a request for a judgment against the shore parties that cancels the judgment that they hold. He seeks a permanent injunction precluding the defendants from any further collection actions. He asserts that as a result of shore's conduct, the shore's parties should forfeit their rights under the judgment. Furthermore, the claims for relief include a claim for damages. The amount of the damages sought, which is revealed in the civil cover sheet, is $31 million, precisely the amount of the underlying state court judgment. So, therefore, he's seeking to set aside the state court judgment. He's asking this court to take the arbitration judgment and set it aside completely. His claims really echo the Supreme Court's statement in ExxonMobil that Black has repaired to the federal courts to undo the judgment against him. The trial court, the district court here, correctly ruled that Rooker Feldman precludes him from doing that. Mr. Black argues that many of the plaintiffs here are strangers to the underlying judgment, so that Rooker Feldman does not apply. He doesn't explain, however, if that's the case, how those plaintiffs have any standing to bring this lawsuit at all. Those very same plaintiffs, which are, as Judge Jones pointed out, 100 percent owned by Black and were directed by Black to file this lawsuit, they allege an injury resulting from the judgment in the amount of $31 million. They also assert claims on behalf of Black that seek to have the judgment forfeited or have equitable estoppel to stop plaintiffs from attempting to satisfy the judgment. They ask that the judgment be canceled. So if they're right that certain of the plaintiffs are not parties to the state court judgment and therefore can't be barred by Rooker Feldman, they haven't explained exactly how those plaintiffs would have standing to bring their claims here. I would submit that if they had any standing, it would only be through a derivative action, which they have not brought. So either they lack standing altogether or they are parties to the underlying judgment, which they are because the injury that they allege was taking over those companies. So those companies are parties to the underlying judgments. With respect to the bid rigging claim, the bid rigging claim, the appellants don't directly challenge the district court's ruling on the Sherman Act claims. They instead, in their brief, they conflate all the allegations and argue generally conspiracy, but they don't actually assert the Sherman Act claims on appeal. To the extent that the court sees that their arguments have been asserted regarding the sufficiency of their conspiracy allegations, Judge Barksdale is correct that there is not a sufficient ground to find, to reverse the district court's finding that 12b-6 precludes this appeal. Let me just play out some ideas here. Assuming these are all entities more or less controlled by Mr. Black, nevertheless they have, let's say it's a piece of real estate or it's a rental property, and it has been wrongfully foreclosed on because of the separate corporate, I don't know whether you alleged piercing the corporate veil or not, but it's got a separate LLC status, we'll assume that, and they wrongfully take it over. Obviously the turnover order was reversed, and they've held it for a period of time and have in fact damaged the property during that period of time. So there is wrongful possession, and then there's damage in addition. Why isn't the additional damage actionable? The additional damage falls within their claim for $31 million. Their claim is that they were damaged. Well, the number is disturbing. The correspondence between the number and the original thing is disturbing, but no matter how you get to it, is there not also a case, if they had taken it over, if this was, you know, the bank forecloses on a home and it turns out to be a wrongful foreclosure, and in the meantime the bank has allowed the house to burn down. I mean surely there's an action for that which happens during the period of wrongful possession. Perhaps that's the case, Your Honor. I don't believe that such an action would belong in federal court, and I don't think that that's what the claim is here. That is, we can look at each of the complaints. There are two complaints here, as the court knows, and in each of them the plaintiffs continually request that the district court set aside the underlying arbitration judgment. That's the relief they're seeking. And if we look to the relief, we know what it is that they're after. It's not a matter of what they've argued happened to them. It's a matter of what they hope to achieve through this lawsuit. And what they hope to achieve is to set aside the underlying arbitration judgment, which is something that is not permitted under Brooker-Feldman. They've tried very hard to mask their real purpose, and in fact in their complaint and in their brief to this court, they disavow any interest in setting aside the underlying arbitration judgment. But if you look hard at the complaint, which I confess is a little difficult because the complaints are extremely lengthy and assert claims without real clarity. I have to say, wouldn't you be concerned if the judge had entered a modified order on an ex parte basis or ex parte communications and so on? Well, Your Honor, as we point out in our brief, post-judgment execution can be done ex parte. There's no necessity for due process at that point because the idea is that a judgment debtor is on notice that at any time his assets might be executed. So an ex parte communication between . . . No, but my understanding is they came in asking for one kind of foreclosure and then they got the judge to enter another, a much broader order. Well, actually the allegations are not exactly that. There was a change in the proposed order, but the proposed order was served on all parties. It wasn't a matter of simply shifting the order. Although it depends on which order you're talking about. I'm talking about at this point the August order, which was what gave rise to the execution on these entities. Do you believe that Rooker-Feldman covers all of their claims? Or do you think some of them would fall under 12B6? I think the district court correctly held that the Sherman Act claim would survive the Rooker-Feldman analysis, but also correctly found that 12B6 applies and that the allegations were not sufficient to survive a 12B6 analysis. As I mentioned before, their argument really is continually that they're not trying to attack the underlying judgment. But if you start reading their complaint from the very beginning, the first few words of their complaint address that underlying judgment and attack it and describe it as arbitrary and irrational and unsupportable, and that's how they set up their entire complaint. Their complaint is rife with requests to set aside the underlying judgment. As I said, on page 850 of the record on appeal, they argue that the arbitration award was irrational and rendered in the face of contractual undertakings that under Texas law make such an award unsupportable. They argue at page 884 that the shore parties are holders of a judgment in the approximate amount of $31 million. The conduct of the shore party defendants taken with the other defendants renders them equitably estopped from asserting any claim under that judgment. They say because of the abuses here and set forth, the defendants should be equitably estopped from pursuing any collection actions on the judgment, and the judgment should be deemed satisfied. Any and all rights which the shore party defendants may have to the judgment should be forfeited. They ask for a permanent injunction precluding the defendants from any further collection actions. But, you know, so how are they to, just let's assume their allegations have something to them and they're sufficiently pled that they got the judge to enter this. Most judges would not go out of their way to enter an order that does not, that covers exempt property, right? That's correct, Your Honor. All right. So, you know, if they have sufficient allegations that something fishy was going on here, then what you've got is, yes, there's plenty of hyperbole about the background arbitration award, but the fact is you've got conduct separate and apart from that. I don't think that the court can look at them separately the way that this complaint . . . And what, Exxon doesn't say that. So what other case do you say? Is it always just a matter of what you, the way we construe the pleadings or is there a case that says that? Well, I think that this Court's case, I'm trying to remember the name of it. I'm sorry, Your Honor. Tron? Yes. Thank you. Although it holds the other way, it finds that Rooker-Feldman does not apply, it does indicate that the Court needs to look at the pleadings and at the relief requested to determine what the nature of the complaint is. And as I said, we are looking at the nature of the relief requested. And I'm looking at Roman numeral 7A, which is the final paragraph of their complaint. And it says, respectfully request the court award judgment against the defendants for a sum of actual and compensatory damages to be proven in this litigation. And then B and C certainly talk about the judgment, the arbitration judgment. B does. C talks about punitive damages. So I don't understand why we are tied to reversal of the arbitration judgment in the matter of damages here. Well, as I said, Your Honor, their pleading for damages is in the exact amount of the arbitration. But that's not the concluding prayer. Well, that's true, Your Honor. You're right. I think you said that the $31 million is on the cover sheet that you file with your complaint? It's on the civil cover sheet. And the clerk's office appears to have made a mistake and entered it on both docket sheets as a plea for $31 billion. But it's pretty clear from the civil cover sheets that they are requesting $31 million. It's also clear from their brief to this court that what they're looking for is a judgment setting aside the underlying arbitration award. The two turnover, I think they're called turnover awards in Texas? Yes, sir. Turnover. The two that were vacated, what is the status of the two now? They are void. They've been vacated. No action taken to have them reinstated or anything? No, Your Honor. So Black has all his property back? Well, that's an interesting question, Your Honor. In his brief to this court, he indicates that his property is in the hands of the sheriff. It's clear from the district court's order that the district court believed that Black had his property back. I'm not sure how Black can assert that the sheriff has this property given that the orders, the underlying turnover orders, have been vacated. So what was the basis of vacating the turnover orders in Texas state court? They were found to be void for various reasons, but not because of any conspiracy. Give us a few of the reasons they were found to be void. Well, primarily that they were wrongful in that they attached exempt property. Is there any allegation that the judge was somehow improperly acted, improperly, illegally, Judge Martinez, I guess is the judge? You mean in the state court? In the state judgment reversing the turnovers. No, there was not, Your Honor. That appellate court decision was based entirely on the faulty, the errors in obtaining the turnover order. And why is Judge Martinez no longer on the bench? I do not know the answer to that question. He left the bench shortly after these orders were entered, and I do not know the answer to that question. It certainly is not in the record, Your Honor. My colleague, Melissa Ray, is here to argue on behalf of Richard Daly, who is another defendant. Douglas Allison is a third defendant who ceded his time to me. You're not disputing that there would be arguably a claim, a viable claim, for this damage theory I have in the state court? Well, Your Honor, we dispute that there is a viable theory. Well, you dispute on the facts, but not. Exactly. Yes, Your Honor, we do not dispute that there is a viable claim. And there is, as Mr. Taylor pointed out, although it's outside the record, there are two lawsuits currently pending in Harris County against these same defendants alleging these same causes of action. Okay. Thank you. Thank you. Okay. Please, the Court. I'm Melissa Ray. I represent Richard Daly, who, as Ms. Southwick said, is a co-defendant. Mr. Daly is an attorney. He became involved in the lawsuit or in the underlying litigation after the arbitration award was entered, so he was not involved in the underlying arbitration. He became involved during the collection process. The allegations against Mr. Daly are fairly sparse. There are very few specific allegations against him in the two complaints. They primarily revolve around, I believe Mr. Taylor talked a little bit about, submission of the agreed order. There is an allegation that he submitted two draft orders, two of the draft turnover orders, before they were entered. And the only other specific allegation against Mr. Daly is that he sent some emails transmitting those orders to various co-counsel, opposing counsel, that sort of thing. In the event that the Court reaches the merits, finds that it has subject matter jurisdiction and reaches the merits, Daly has additional grounds for dismissal. In addition to the Iqbal Twombly issues, which we've detailed in our brief, and Ms. Southwick talked a little bit about, Mr. Daly, we believe it's clear under Texas law, is qualifiably immune because all of the allegations against him were undertaken in his role as an attorney or the types of conduct typically undertaken by attorneys, typical of the practice of law. In Texas law, it's clear that when these types of allegations are made, it's not the nature of the conduct of the attorney that is relevant, but the kind of conduct. And here, the kind of conduct that's alleged, submitting orders, emailing orders, that sort of thing, are all things that are typical of an attorney's representation of his client. We have, in our brief, discussed two opinions from the First Court of Appeals in Houston. The cases are Dixon Financial Services v. Chang and Dixon Financial Services v. Greenberg, Payden, Oshner, and Siegmeyer. I think I got that right. Those two companion opinions, we've discussed them on pages 30 to 33 of our brief, and they're very similar factually. There is an underlying arbitration, collection proceedings on an arbitration award, very similar types of conduct alleged against the attorney, and the trial court granted summary judgment in those two cases, finding that that conduct was typical of what is normally undertaken by lawyers in representing their clients. And in those two cases, the First Court of Appeals held, and we believe it to be the case here, that the remedy, if there was some kind of wrongful litigation conduct, he has a remedy for that. He had a remedy in the trial court in the form of sanctions. He simply does not have a cause of action against Mr. Daley, independent. And regardless of the other 12B6 issues, we would ask the Court to look in addition at the litigation immunity issue and hold that Mr. Daley should be dismissed on those grounds as well. Okay. Thank you very much. Thank you, Your Honor. Mr. Taylor. Thank you, Your Honors. May it please the Court, to respond to a couple of things that I heard from the other side. They started off by pointing out that Paul Black, individually, in his lawsuit, in addition to the various damage claims, asked that the arbitration judgment no longer be collectible and cancel it. And then they used that as a premise to try to argue that the entire case should be tossed on Rooker-Feldman grounds. I want you to know that the record is clear that there were two separate lawsuits. Paul Black filed the first lawsuit by himself. Twenty-six other parties filed a second lawsuit, none of whom were Paul Black. That request that they quoted to you is only from Paul Black's pleading. It's not from the other 26 entities. So I didn't want the record to look like their springboard for Rooker-Feldman applied to 27 parties. It doesn't. It applies to one. And as to that one. That's the copy of the complaint I have. The second point I wanted to make sure that we're clear on is, and I tried to say this earlier, Rooker-Feldman presupposes that you're looking at somebody who is a state court loser, asking for redress because of injury linked to the state court loss, such that you're asking the federal court to review and second guess and perhaps overturn or modify in some fashion the loss. That doesn't apply to the 18 companies I told you about. They're strangers. They're not a party to the arbitration, and they're not a party to the turnover proceedings. They're not a party to that bid rigging November 3rd order, Judge Barksdale, I told you about in my opening remarks either. They're total, complete strangers. So Rooker-Feldman's first point doesn't even apply to those entities or to Miss Black, Paul Black's wife. Second, it's critical to recall that there is a fundamental difference between the entities and Paul Black. It is true that Paul Black has an interest in all of these entities, but he's complied with the law and set up separate entities. There's been no allegation pleading for proof. Well, that was the basis of the avoiding the turnover orders. In part, yes. Also, there's a bankruptcy stay, and there also was a complete failure to produce any evidence, and a turnover proceeding has to be based on evidence. You can't just make an unverified document motion and say, please give it to me. And, Judge, you pointed out, and I want to repeat, that it's not true that a turnover collection proceeding gives rise to an unqualified right to communicate with the decision maker, the judge, ex parte, on any basis that you see fit. That's not correct. What's supposed to happen in a turnover proceeding is you've got to prove, first of all, that there's property out there that's not exempt, that you can't readily attach through ordinary legal means, and if you don't get it immediately, poof, it's going to be gone. And so you go in on an ex parte basis, but the paperwork is in writing. It's not a verbal conversation. It's not a text message or a cell phone call. You've got to go and write in court, in person, and present something under oath in concrete written terms. And then if the court grants it, then the party that's hurt by that has some rights to try to unpop the popcorn. That's not what happened here. What I'm telling you is that they went in first time on a written basis and then came away with a totally complete standard and set of relief in an order that was never requested. Secondarily, they go in and get the trial judge to order a bankruptcy trustee to convey assets that belong to stranger organizations that aren't part of this debt to Miss Shore directly. No pleading, no proof, no hearing. It just happened. And then thirdly, at the end, they decide themselves to try to unpop popcorn and realize that they had been getting possession directly from the court by order of these assets, and it's supposed to go to the sheriff. So then they said, never mind, just send it to the sheriff in that third order, and then have all these things in there for Doug Allison that he gets to receive all this property for a bar and a restaurant that was never requested or part of a hearing. So we're looking at, say, what in the world is going on here? And then you have an agreed order that's not signed by any of the parties. It's signed by a lawyer who's not a party in the case, not even a lawyer for a party in the case. And for those reasons, my time has expired. We ask that the court remand for further proceedings. All right, sir. Thank you very much. This concludes our docket for this morning. We'll be in recess until 9 o'clock tomorrow.